David M. Walsh (Bar ID #030441997)
Leslie A. Saint (Bar ID #018022008)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ  07922
(908) 795-5200
ATTORNEYS FOR DEFENDANTS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| XIOMARA ALTAMIRANO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| RETAILING ENTERPRISES LLC d/b/a | : | **NOTICE AND PETITION FOR** |
| INVICTA STORES; ANDRIA ROSENFELD; | : | **REMOVAL OF CASE FROM THE** |
| SILVIA PINTO; CHRISTINA DE LOS | : | **SUPERIOR COURT OF NEW JERSEY,** |
| REYES; ABC CORPORATIONS 1-5 | : | **LAW DIVISION, PASSAIC COUNTY** |
| (fictitious names describing presently | : | |
| unidentified business entities); and JOHN | : | |
| DOES 1-5 (fictitious names describing | : | |
| presently unidentified individuals), | : | |
| | : | |
| Defendants. | : | |

TO:   Clerk                                           Peter D. Valenzano, Esq.
      United States District Court for the            McOmber, McOmber & Luber, P.C.
      District of New Jersey                          54 Shrewsbury Avenue
      MLK Jr. Federal Bldg. & Courthouse              Red Bank, NJ  07701
      50 Walnut Street
      Newark, NJ  07102

       Defendant, Retailing Enterprises LLC d/b/a Invicta Stores, ("Defendant"), pursuant to 28

U.S.C. §§ 1331, 1441, and 1446, respectfully submits this Notice and Petition For Removal of a

Case from the Superior Court of New Jersey, Law Division, Passaic County, bearing Docket No.

L-1274-20, and as grounds for removal allege as follows:

       1.     On April 24, 2020, Xiomara Altamirano ("Plaintiff") filed a civil action captioned

<u>Xiomara Altamirano v. Retailing Enterprises LLC d/b/a Invicta Stores, et al.</u>, Docket No. PAS-L-1274-20, in the Superior Court of New Jersey, Law Division, Passaic County.  A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.      Defendant Retailing Enterprises LLC d/b/a/ Invicta Stores has not yet been served with a copy of the summons and complaint.

3.      This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446. Defendant has effected removal within thirty (30) days of receipt by it of a paper from which it could first be ascertained that this action is removable.  <u>See</u> 28 U.S.C. § 1446.

4.      No proceedings have taken place in the state court action. Since Defendant has not yet been served with a copy of the summons and complaint, Defendant has not served an answer or responsive pleading to Plaintiff's Complaint or made any appearance or argument before the Superior Court of New Jersey.

5.      We also represent the individual defendants, Andria Rosenfeld ("Ms. Rosenfeld"), Silvia Pinto ("Ms. Pinto"), and Christina De Los Reyes ("Ms. De Los Reyes).  Ms. Rosenfeld, Ms. Pinto, and Ms. De Los Reyes consent to this notice of removal, without waiving any defenses or objections to service of process or to being subject to the <u>in personam</u> jurisdiction of this Court in this District.

## **REMOVAL BASED ON DIVERSITY JURISDICTION**

6.      The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This case may therefore be removed pursuant to 28 U.S.C. § 1441.

7.      28 U.S.C. § 1441(a) provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

8.     This action is one over which this Court has original jurisdiction.  Pursuant to 28 U.S.C. § 1332(a)(1), the district courts have original jurisdiction of all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.

9.     In this matter, there is complete diversity of citizenship between Plaintiff and Defendant.

a.  Plaintiff has been and is, both upon the filing of the subject complaint on April 24, 2020 and the filing of this removal petition, a citizen and resident of the State of New Jersey. (See Exhibit A).

b.  Defendant has been and is, both upon the filing of the subject complaint on April 24, 2020 and the filing of this removal petition, a corporation duly created and organized under the laws of the state of Florida. Defendant is not (at the time of the filing of the subject complaint on April 24, 2020 and as of the time of the filing of this removal petition), a corporation created and/or organized under the laws of New Jersey, and does not have a principal place of business in New Jersey.

c.  Ms. Rosenfeld is a resident of the State of New York.  Ms. Pinto is a resident of the State of Florida.  Ms. De Los Reyes is a resident of the State of Florida.

d.  Plaintiff's complaint alleges that Defendant discriminated against her on the basis of her pregnancy, subjected her to a hostile work environment, wrongfully and/or constructively terminated her employment, and retaliated against her. In her complaint, Plaintiff

seeks "compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post- judgment interest, and attorneys' fees and costs of suit."  (See Exhibit A, "Wherefore" clauses under Counts One and Two).  Given the relief potentially available to Plaintiff, Defendant submits that the amount in controversy exceeds the jurisdictional amount of $75,000.  See Bergen Cnty. Improvement Auth. v. Bergen Reg'l Med. Ctr., 2012 U.S. Dist. LEXIS 81891 (D.N.J. June 7, 2012) (holding that when plaintiff has not specified that amount in controversy is less than jurisdictional minimum, defendant need only show that, to legal certainty, amount in controversy exceeds threshold requirement).

10.    Therefore, Defendant respectfully submits that this Court has original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332(a)(1). Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

## VENUE

11.    Pursuant to 28 U.S.C. §§ 1441(a), venue lies in the United States District Court for the District of New Jersey because the state action was filed in this District and this is the judicial district in which the action arose.

## NOTICES

12.    Pursuant to 28 U.S.C. §1446(d), Defendant has given written notice of the removal of this action to all adverse parties, and has filed a copy of this notice with the Superior Court of New Jersey, Law Division, Passaic County.

13.     Defendant files this Notice of Removal without waiving any defenses to the claim(s) asserted by Plaintiff, including improper service of process, or conceding that Plaintiff has pled claim(s) upon which relief can be granted.

WHEREFORE, Defendant respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Passaic County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ  07922
(908) 795-5200

Dated:  May 18, 2020          By:          *s/ David M. Walsh*
                                            David M. Walsh
                                            Leslie A. Saint
                                            ATTORNEYS FOR DEFENDANTS

4830-2179-1676, v. 1

# EXHIBIT A

R. Armen McOmber, Esq. - NJ ID # 018251998
  ram@njlegal.com
Christian V. McOmber, Esq. - NJ ID # 012292010
  cvm@njlegal.com
Matthew A. Luber, Esq. - NJ ID # 017302010
  mal@njlegal.com
Peter D. Valenzano, Esq. - NJ ID # 037892010
  pdv@njlegal.com
Austin B. Tobin, Esq. – NJ ID # 002622010
  abt@njlegal.com
Nicholas R. Carlson, Esq. – NJ ID # 280112019
  nrc@njlegal.com
McOmber McOmber & Luber, P.C.
54 Shrewsbury Avenue
Red Bank, NJ 07701
(732) 842-6500 Phone
(732) 530-8545 Fax
*Attorneys for Plaintiff, Xiomara Altamirano*

| | |
|---|---|
| XIOMARA ALTAMIRANO,<br><br>Plaintiff,<br><br>vs.<br><br>RETAILING ENTERPRISES LLC d/b/a INVICTA STORES; ANDRIA ROSENFELD; SILVIA PINTO; CHRISTINA DE LOS REYES; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>PASSAIC COUNTY<br><br>DOCKET NO.:<br><br><u>Civil Action</u><br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

Plaintiff Xiomara Altamirano ("Plaintiff"), by way of Complaint against Defendant Retailing Enterprises LLC d/b/a Invicta Stores ("Defendant Invicta"), Defendant ABC Corporations 1-5 (fictitious names describing presently unknown business entities) (along with "Defendant Invicta," collectively referred to as the "Corporate Defendants"), Defendant

Andria Rosenfeld ("Defendant Rosenfeld"), Defendant Silvia Pinto ("Defendant Pinto"), Defendant Christina De Los Reyes ("Defendant De Los Reyes") and Defendant John Does 1-5 (fictitious names describing presently unidentified individuals) (along with "Defendant Rosenfeld," "Defendant Pinto," and "Defendant De Los Reyes," collectively referred to as the "Individual Defendants") alleges as follows:

## PRELIMINARY STATEMENT

Defendant Invicta operates a workplace culture rife with discrimination and retaliation. In disregard of its obligations under New Jersey Law, Corporate Defendants subjected Plaintiff Xiomara Altamirano to an intolerably hostile work environment, the primary source of which was Plaintiff's supervisor, Defendant Rosenfeld. The truth of the matter is that after learning that Plaintiff was pregnant, Defendant Rosenfeld made it her singular mission to force Plaintiff from the company by subjecting her to transparently pretextual discipline stemming from seemingly innocuous events which occurred months prior. Indeed, Defendant Rosenfeld made her disgust with Plaintiff's pregnancy crystal clear when she flippantly stated "[I] am not cold hearted, but in this case I am."

The emotional distress caused by this outrageous harassment forced Plaintiff to take a medical leave of absence, where she found herself subject to even more retaliation and humiliation, culminating in an unlawful constructive termination on or about March 02, 2020. Fortunately, New Jersey's Law Against Discrimination ("LAD") provides redress for employees subjected to such treatment. Plaintiff brings this lawsuit to expose Defendants' conduct and to seek redress for pregnancy discrimination in violation of New Jersey law.

## PARTIES

1.      Plaintiff is an individual who resides in Haledon, New Jersey, and at all times relevant hereto was employed by Corporate Defendants as an Area Manager.

2

2.      Defendant Invicta is a limited liability company licensed to do business under the laws of the State of Florida and primarily engaged in the design, manufacturing, and marketing of wristwatches. Defendant Invicta's corporate headquarters are located at 2227 N. Federal Highway, Suite 204, Hollywood, Florida 33020. At all relevant times herein, Defendant Invicta was an "employer" as defined by the LAD.

3.      Defendant Rosenfeld is an individual who, at all times relevant herein, is a District Manager of Defendant Invicta. At all times relevant herein, Defendant Rosenfeld supervised Plaintiff in the performance of her duties as an Area Manager for Defendant Invicta. Accordingly, this claim is brought by Plaintiff against Defendant Rosenfeld in her individual capacity and/or as an agent or servant of Corporate Defendants. At all relevant times herein, Defendant Rosenfeld was an "employer" as defined by the LAD.

4.      Defendant Pinto is an individual who, at all times relevant herein, is a Human Resources Representative for Defendant Invicta. At all times relevant herein, Defendant Pinto was responsible for implementing and maintaining human resources policies throughout Defendant Invicta. Accordingly, this claim is brought by Plaintiff against Defendant Pinto in her individual capacity and/or as an agent or servant of Corporate Defendants. At all relevant times herein, Defendant Pinto was an "employer" as defined by the LAD.

5.      Defendant De Los Reyes is a Human Resources Representative for Defendant Invicta. At all times relevant herein, Defendant De Los Reyes was responsible for implementing and maintaining human resources policies throughout Defendant Invicta. Accordingly, this claim is brought by Plaintiff against Defendant De Los Reyes in her individual capacity and/or as an agent or servant of Corporate Defendants. At all times relevant herein, Defendant De Los Reyes was an "employer" as defined by the LAD.

6.      Defendants ABC Corporations 1-5 are currently unidentified business entities which have acted in concert with Corporate Defendants, and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination and/or anti-retaliation policies of the corporate defendants, and/or currently unidentified business entities which may have liability for the damages suffered by Plaintiff under any theory advanced herein.

7.      Defendants John Does 1-5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination and anti-retaliation policies of the Corporate Defendants and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

8.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States specific policies prohibiting gender and/or pregnancy-based discrimination.

9.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States policies and procedures prohibiting gender and/or pregnancy-based discrimination.

10.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States a zero-tolerance policy when it comes to gender and/or pregnancy-based discrimination.

11.      Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States policies and procedures requiring an employee who believes he or she was the victim of gender

and/or pregnancy-based discrimination to report the harassment to supervisory and management staff.

12.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States policies and procedures whereby they would engage in a timely and effective investigation of complaints of gender and/or pregnancy-based discrimination brought to their attention by employees.

13.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States policies and procedures committing them to engage in a timely and effective investigation of complaints of gender and/or pregnancy-based discrimination brought to their attention by employees.

14.     Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey and throughout the United States policies and procedures committing them to undertake prompt and effective remedial measures to put a stop to any gender and/or retaliation they found to exist.

15.     In or around the month of May 2019, Plaintiff began working as an Area Manager for Defendant Invicta.

16.     At all times throughout her employment, Plaintiff performed her job responsibilities competently and diligently, loyally committed to Defendant Invicta and the customers which she dutifully served.

**A.    Plaintiff Was Subject to Pregnancy Discrimination and Retaliation in Violation of the LAD.**

17.    In or around January 2020, Plaintiff informed Corporate Defendants that she was pregnant. Instead of reacting with joy and compassion, Corporate Defendants appallingly discriminated against Plaintiff.

18.    When Plaintiff informed her District Manager, Defendant Rosenfeld, of her pregnancy, Defendant Rosenfeld responded "[I]t is not a good time for you to have a child. I am not cold hearted, but in this case I am."

19.    To put a finer point on it, Defendant Rosenfeld openly admitted that she would not treat Plaintiff's pregnancy with the respect, flexibility and humanity required under the New Jersey Law Against Discrimination.

20.    Adding insult to injury, Defendant Rosenfeld followed up her unlawful statement by making baseless criticisms of Plaintiff on account of her pregnancy. These baseless critiques include, but in no way are limited to the following:

   a.    "This company is not emotional, and because you're pregnant, you're in an emotional state right now";

   b.    "You really need to get your life together"; and

   c.    "Don't be emotional."

21.    Worse, Defendant Rosenfeld doubled down on her discriminatory comments by immediately subjecting Plaintiff to disparate treatment and retaliatory discipline based on fraudulent and pretextual grounds.

22.    On January 23, 2020 – just three days after learning that Plaintiff was pregnant – Defendant Rosenfeld issued Plaintiff a "final write up" and saw fit to threaten her by saying "next time, it is termination."

23.     The aforementioned disciplinary notice was not in response to any contemporaneous wrongdoing by Plaintiff. Rather, Defendant Rosenfeld said Plaintiff was issued this "final write up," because she had failed to submit an employee review in September 2019 and because she had missed a conference call on December 11, 2019.

24.     Neither of the aforementioned grounds for discipline are legitimate. On the contrary, they are a pretextual ruse designed by Defendant Rosenfeld to force Plaintiff from her role with the company.

25.     First, Plaintiff provided documentation to the company showing that neither she nor any of her supervisors were aware that the employee review at issue was outstanding and was supposed to be submitted in November 2019 – two months after Plaintiff allegedly failed to timely submit it.

26.     Second, Plaintiff had sent an email ahead of time to Defendant Invicta's Merchandise Manager, Tracie Mackey ("Ms. Mackey"), asking to reschedule the December 11, 2019 conference call due to sudden illness, but never heard back from Ms. Mackey or anyone else at Defendant Invicta about rescheduling same.

27.     Third, no disciplinary actions were taken regarding either of these alleged incidents of misconduct until the days immediately after Plaintiff announced her pregnancy. This is no coincidence. Rather, this is blatant pregnancy discrimination and flagrant retaliation under New Jersey's Law Against Discrimination.

28.     After issuing the "final write up," Defendant Rosenfeld continued to retaliate against Plaintiff, despite Plaintiff having complained of pregnancy discrimination to Defendant Invicta's Human Resources Representative, Defendant Pinto.

29.     For example, Defendant Rosenfeld scheduled a "mandatory" meeting for February 06, 2020, knowing full well that it was Plaintiff's day off. When Plaintiff complained, Defendant Rosenfeld stated "you have to be there, it is company policy."

30.     Defendant Rosenfeld failed to mention that the company handbook states that each employee is entitled to two days off per week and says nothing about attending mandatory meetings on an employee's day off.

31.     Furthermore, Defendant Rosenfeld began making Plaintiff track all of her hours at work, which no other employee of Corporate Defendants is forced to do, and also began to threaten Plaintiff with termination if Plaintiff's stores did not perform well at several upcoming collector's events which had been scheduled.

32.     Such threats were not made to any other Area Managers and have nothing to do with Plaintiff's actual job performance or the performance of stores which are under her supervision. Rather, they were transparent attempts to manufacture reasons to terminate Plaintiff or coerce her into resigning.

33.     The harassing and degrading conduct was severe or pervasive enough to make a reasonable woman and employee believe that the conditions of employment were altered, and the work environment was hostile.

   **B.     Corporate Defendants Repeatedly Sought to Manufacture a Pretextual Ruse Designed to Terminate and/or Force Coerce Plaintiff Into Resigning Her Position With the Company.**

34.     On February 05, 2020, Plaintiff submitted a formal complaint letter to Corporate Defendants describing the discrimination and retaliation to which she had been subjected and demanding that the company take steps to remedy the situation. The email to Defendant Pinto stated, in pertinent part:

I just wanted to Notify you that working with Andria Rosenfeld is tough. **She is discriminating and really bullying me at work**. I have NEVER in my life felt this way EVER. I called her as my supervisor to let her know in regards of a situation today with some issues at Woodbridge. As per E-Comm i had no idea that woodbridge was doing it incorrectly we just received info in regards to ECOMM and it showed that area 101 was doing great? To my knowledge the procedures were correct in that Store. We had to cancel the PI because of an exchange or something similar. I had no problem continuing the PI and picking up the scanner from Jersey Gardens. She then said i was in complete fault and that her exact words were " **I NEED TO GET MY LIFE TOGETHER"**. Last week when i told her i was pregnant her words were "**I AM NOT REALLY COLD HEARTED OH BUT WAIT ACTUALLY I AM and ITS NOT THE BEST TIMING"**. When she wrote me up she proceeded to tell me i spoke to silvia and she said you have had some obstacles thrown at you but i am from NEW JERSEY its really not that hard its a tough world. She is extremely unprofessional she looks at the calendars all the time but still knowing i had off she scheduled a meeting for tomorrow. Luckily it was cancelled but if its not one thing its another. Things completely changed with her attitude towards me once i told her i was pregnant last week the calls, messages just everything changed. . . . .

As you know when a store needs me to be there i am there i might not be perfect but i am always willing to learn. With andria i have to walk on my tippy toes and really can't tell her anything without her pointing fingers at me or insulting me i am sure that she is looking for anything to fire me its quite obvious. I love working for Invicta, the employees and customers is what really makes me happy. I am unsure as to what to do around her as she is my boss and I do everything that i am told to do but she is clearly retaliating against me.

35.     Rather than take Plaintiff's allegations seriously, Defendant Invicta attempted to

unlawfully terminate Plaintiff by fraudulently misrepresenting that Plaintiff had formally sought

leave under the Family Medical Leave Act ("FMLA"), for which she is not eligible.

36.     On February 18, 2020, Plaintiff submitted a note from her physician to Defendant

Invicta prescribing bed rest from that date through March 02, 2020, and requesting that Defendant

Invicta prescribe this necessary time off from work.

37.     Defendant Invicta feigned compliance with the restrictions set forth in the February 18, 2020 note from Plaintiff's physician. While Plaintiff was out of work on doctor's orders, Defendant Pinto and Defendant De Los Reyes contacted Plaintiff multiple times requesting that she contact Automatic Data Processing, Inc., ("ADP"), the benefit's administrator for Defendant Invicta in order to apply for a "leave of absence" under the FMLA. At no time, however, had Plaintiff applied for FMLA leave or a non-FMLA block leave of absence.

38.     Even though Plaintiff never applied for FMLA leave or a non-FMLA block leave of absence, ADP received a request for Plaintiff to go on non-FMLA leave submitted by Defendant De Los Reyes with no authorization by Plaintiff.

39.     Thereafter, Plaintiff received an email from ADP confirming that she was not eligible for protected FMLA leave. Plaintiff then spoke with ADP Representative, Pablo Delgadillo ("Mr. Delgadillo") who advised Plaintiff that Defendant Invicta had terminated her benefits and her employment with the company.

40.     Unsurprisingly, on March 02, 2020, Defendant De Los Reyes called Plaintiff on the phone and informed her that she was "no longer employed by [Defendant Invicta]." Plaintiff followed up this conversation with an email to Defendant De Los Reyes, wherein she confirmed that the company had terminated her employment. Plaintiff's email to Defendant De Los Reyes stated, in pertinent part:

> "[I] actually did notify adp until late this afternoon.
>
> They also informed me that you have contacted them directly to let them know in regards to me not qualifying for FMLA leave and being terminated in the system. ADP did not send anything out to me since I just reached out to them today as of yet. I am yet confused as how the process is done with Human Resources it's been extremely frustrating as **I have been on leave due to almost losing my baby due to the work conditions and continuous harassment received from Invicta and this is the treatment that I yet receive?**"

10

41.     Thereafter, on March 05, 2020, counsel for Defendant Invicta, Porpoise Evans, Esq., from the law firm Perlman, Bajandas, Yevoli & Albright, P.C., sent Plaintiff correspondence attempting to delicately "walk back" and/or reverse her unlawful termination and instead offer her non-FMLA leave through the month of March 2020.

42.     Notably, the correspondence continues to falsely allege bad behavior by Plaintiff. Specifically, the letter states that "[Defendant] Invicta understood that you would return to work on March 2nd, but you have not done so," despite the fact that the February 18, 2020 letter from Plaintiff's physician explicitly stated that Plaintiff was to remain on bed rest through March 02, 2020.

43.     Needless to say, these ongoing efforts by Corporate Defendants represent an intent to push Plaintiff out of the company, because she is pregnant and because she complained about the discrimination she suffered on account of her pregnancy.

## COUNT ONE

## NEW JERSEY LAW AGAINST DISCRIMINATION – DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND WRONGFUL AND/OR CONSTRUCTIVE TERMINATION ON THE BASIS OF PREGNANCY

1.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

2.     Plaintiff was subjected to discrimination and wrongful termination on the basis of her pregnancy by Defendants.

3.     Corporate Defendants did not have effective anti-discrimination policies in place, Corporate Defendants have not maintained anti-discrimination policies that are current and effective, and Corporate Defendants' anti-discrimination policies existed in name only.

4.      Corporate Defendants did not maintain useful formal and informal complaint structures for victims of discrimination.

5.      Defendants did not properly train their supervisors and/or employees on the subject of discrimination.

6.      Corporate Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of their policies and complaint structures regarding discrimination.

7.      Defendants did not have a commitment from the highest levels of management that discrimination will not be tolerated.

8.      As a result of the above discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and has suffered significant economic damages.

9.      As Plaintiff's employer, Corporate Defendants are vicariously, strictly, and/or directly liable to the Plaintiff pursuant to the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.,* in that Defendants subjected Plaintiff to discriminatory adverse employment actions; and/or the affirmative acts discrimination committed by Individual Defendants and by Plaintiff's supervisors occurred within the scope of their employment; and/or Defendants were deliberately indifferent, reckless, negligent, and/or tacitly approved the discrimination; and/or the acts of discrimination were aided by Corporate Defendants in delegating power to Individual Defendants to control the day-to-day working environment; and/or Corporate Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of discrimination in the workplace; and/or Defendants had actual knowledge of the discrimination against Plaintiff and failed to promptly and effectively act to stop it.

10.     Individual Defendants and/or other individuals yet to be identified aided, abetted, incited, compelled and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce Defendants to commit acts and omissions that were in violation of the LAD by committing affirmatively discriminatory acts towards Plaintiff in violation of the supervisory duty to halt or prevent discrimination, rendering all Defendants individually and collectively liable to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

11.     As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the LAD as follows:

A.     Reinstatement of employment and all benefits;
B.     Back pay and benefits;
C.     Front pay and benefits;
D.     Compensatory damages;
E.     Consequential damages;
F.     Reinstatement;
G.     Punitive damages;
H.     Prejudgment interest and enhancements to off-set negative tax consequences;
I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.     Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;
K.     Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.     Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.     Ordering Defendants to undergo anti-discrimination training;

N.    Ordering Defendants to undergo anti-retaliation training;

O.    Ordering Defendants to undergo anti-harassment training;

P.    Ordering Defendants to undergo workplace civility training;

Q.    Ordering Defendants to undergo bystander intervention training;

R.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.    Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.    Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.    Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.    Such other relief as may be available and which the Court deems just and equitable.

## **COUNT TWO**

## **NJLAD – RETALIATION/IMPROPER REPRISAL**

1.    Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

2.    Plaintiff complained and/or protested against the continuing course of harassing, discriminatory, and retaliatory conduct set forth at length above. Defendants had knowledge about those complaints and/or protests.

3.    As a direct result, Defendants took retaliatory action against Plaintiff, which is outlined above.

4.    Defendants are vicariously, strictly and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

5.      As a proximate result of the aforementioned acts and omissions set forth herein,

Plaintiff has sustained emotional and pecuniary damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this

Count, together with compensatory and equitable relief, all remedies available under the law,

punitive damages, emotional distress damages, pre-and post-judgment interest, and attorneys' fees

and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm

suffered in violation of the NJLAD as follows:

A.    Reinstatement of employment and all benefits;
B.    Back pay and benefits;
C.    Front pay and benefits;
D.    Compensatory damages;
E.    Consequential damages;
F.    Reinstatement;
G.    Punitive damages;
H.    Prejudgment interest and enhancements to off-set negative tax consequences;
I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.     Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;
K.    Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.     Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.    Ordering Defendants to undergo anti-discrimination training;
N.    Ordering Defendants to undergo anti-retaliation training;
O.    Ordering Defendants to undergo anti-harassment training;
P.     Ordering Defendants to undergo workplace civility training;
Q.    Ordering Defendants to undergo bystander intervention training;
R.    Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S.     Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T.     Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U.    Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.      Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.      Such other relief as may be available and which the Court deems just and equitable.

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to Rule 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Xiomara Altamirano*

By: */s/ Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: April 24, 2020

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, PETER D. VALENZANO, ESQUIRE, is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Xiomara Altamirano*

By: /s/ *Peter D. Valenzano*
PETER D. VALENZANO, ESQ.

Dated: April 24, 2020